UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDI NICOLE PATTERSON,
o/b/o C.I.P.,

       Plaintiff,                            CIVIL ACTION NO. 12-15230

      v.                                   DISTRICT JUDGE ARTHUR J. TARNOW

COMMISSIONER OF                   MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 12, 13)**

Plaintiff Brandi Nicole Patterson challenges the Commissioner of Social Security's ("the Commissioner") final denial of benefits for her minor son, C.I.P. Cross motions for summary judgment are pending (Dkt. Nos. 12, 13). Plaintiff also responded to the Commissioner's motion (Dkt. No. 14). Judge Arthur J. Tarnow referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 2).

**I.    RECOMMENDATION**

Because substantial evidence supports the Administrative Law Judge's ("ALJ") decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II.    DISCUSSION**

    *A.    Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination

for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility") (internal quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting

credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece

of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.  *Governing Law*

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of HHS*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R § 416.905(a) (SSI).

Although the standard of review of the Commissioner's decision is the same, children's disability claims are reviewed under criteria different from adults. There is no five step evaluation. Instead, pursuant to the 1996 enactment of the Personal Responsibility and Work Opportunity Reconciliation Act, which changed the definition of disability for children seeking

-4-

Social Security benefits, 42 U.S.C. § 1382c(a)(3)(c), there is a three step sequential process in determining whether a child is "disabled." First, the child must not be engaged in substantial gainful activity; second, the child must have a severe impairment; and third, the severe impairment must meet, medically equal or functionally equal one of the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924. In order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing. 20 C.F.R. § 416.924(a); *Hale v. Sec'y of HHS*, 816 F.2d 1078, 1083 (6th Cir.1987). It is insufficient that a claimant comes close to meeting the requirements of a listed impairment. *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986).

Under section 416.926a, if a child's impairment or combination of impairments does not meet or is not medically equivalent in severity to a listed impairment, then the Commissioner will assess all functional limitations caused by the impairment to determine if the child's impairments are *functionally equivalent in severity to any of the listed impairments* of Appendix 1. (20 C.F.R. § 404, subpt. P, app. 1) (emphasis added). The following areas of development (referred to as "domains") are considered in determining whether a child's impairments are functionally equivalent to a listed impairment: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Yourself; and, (6) Health and Physical Well Being. 20 C.F.R. § 416.926a. A finding of functional equivalence to a listed impairment is warranted when the child has an extreme limitation in one domain of functioning or marked limitations in two domains of functioning. 20 C.F.R § 416.926a(d).

**III. REPORT**

### A. *Administrative Proceedings*

On May 26, 2010, Plaintiff applied for supplemental security income on behalf of C.I.P., alleging C.I.P. became disabled on January 1, 2009 (Tr. 19). After the Commissioner initially denied Plaintiff's application, she and C.I.P. appeared with counsel for a hearing before ALJ Donald G. D'Mato, who considered the case *de novo*. In a written decision, the ALJ found C.I.P. was not disabled (Tr. 19-31). Plaintiff requested an Appeals Council review (Tr. 14). On October 3, 2012, the ALJ's findings became the Commissioner's final administrative decision when the Appeals Council declined further review (Tr. 1-3).

### B. *ALJ Findings*

C.I.P. was born on October 4, 2005; he was 5 years, 9 months old on the administrative hearing date (Tr. 22, 41).

The ALJ applied the three-step sequential evaluation process to determine whether C.I.P. was disabled. At step one, the ALJ determined that C.I.P. had not engaged in substantial gainful activity (Tr. 22).

At step two, the ALJ found that C.I.P. had the following "severe" impairments: high frequency hearing loss in the left ear; bronchial asthma; a severe impairment in articulation; a moderate impairment in receptive language; a moderate impairment in expressive language; below average concept development; and, a concentration impairment (Tr. 22).

At step three, the ALJ found that C.I.P. did not have an impairment or combination of impairments that met or medically equaled one of the listings in the regulations (Tr. 22).

The ALJ next determined the degree of limitation in each of six functional domains, and found that C.I.P. did not have an impairment or combination of impairments that functionally

equaled any of the listings. The ALJ's specific findings as to the six functional domains were: Acquiring and Using Information (less than marked limitation) (Tr. 26); Attending and Completing Tasks (less than marked limitation) (Tr. 27); Interacting and Relating with Others (marked limitation) (Tr. 28); Moving About and Manipulating Objects (no limitation) (Tr. 29); Caring for Yourself (less than marked limitation) (Tr. 30); and, Health and Physical Well-Being (less than marked limitation) (Tr. 31). Because the ALJ found no extreme limitations and only one marked limitation, he determined that C.I.P. was not disabled (Tr. 31).

### C. Administrative Record

#### 1. C.I.P.'s Testimony and Statements

C.I.P. testified at the hearing. He liked school, but could not articulate what he liked about it (Tr. 51). C.I.P. played hide and seek with his friends at school; after school, he enjoyed playing video games with his brother (Tr. 51-52). C.I.P.'s favorite show was "Cartoon" (Tr. 52).

#### 2. Plaintiff's Testimony and Statements[1]

According to Plaintiff, C.I.P. had to take a test to determine if he could start first grade (Tr. 43). He could not read, do math, or count to 100 (Tr. 50).

In addition to his learning impairment, C.I.P. was difficult to understand, because he could not pronounce words, especially when he got too excited or upset. He became frustrated, and would shut down and walk away when asked to repeat himself (Tr. 45). Plaintiff frequently volunteered at C.I.P.'s school, and noticed that C.I.P. did not interact with the other children

---

[1]Plaintiff's testimony before the ALJ reflects her subjective view of C.I.P.'s impairments. It is set forth from Plaintiff's perspective; it is not a factual finding of the ALJ or this Magistrate Judge.

because it was hard for them to understand what he was saying (Tr. 48). He was taking speech therapy twice a week for 30 minutes (Tr. 45-46).

C.I.P. could not concentrate for more than five minutes; he had to be reminded to pay attention to what he was doing (Tr. 46). Plaintiff noted that "[C.I.P.'s] other sisters and brothers can sit down and watch TV or play a game for at least 30 minutes [while C.I.P. is] in it for a second and then he's off to do something else" (Tr. 46). C.I.P. also had trouble hearing and following multi-step directions (Tr. 46-47). Plaintiff said "it's a world of difference" between C.I.P. and his four year old and two year old sisters; they can follow directions, complete multi-step processes without a lot of help or attention, and speak very well (Tr. 47).

C.I.P.'s kindergarten teacher believed he was an introvert, liked being babied, and was immature for his age (Tr. 48-49). C.I.P. was being tutored twice a week for 2-3 hours a day; his tutor was concerned about his development and trouble concentrating (Tr. 49).

### 3. Relevant Evidence

#### a. *Stacy Holloway*

On June 21, 2010, C.I.P.'s preschool teacher, Stacy Holloway, completed a questionnaire. As it related to the acquiring and using information domain, Ms. Holloway indicated on the questionnaire that C.I.P. had no problem:

1. understanding school and content vocabulary;
2. learning new material;
3. recalling and applying previously learned material; or,
4. applying problem-solving skills in class discussions.

C.I.P. had a slight problem:

1. comprehending oral instructions;

-8-

    2.      reading and comprehending written material;

    3.      comprehending and doing math problems;

    4.      understanding and participating in class discussions;

    5.      providing organized oral explanations and adequate descriptions; and,

    6.      expressing ideas in written form.

(Tr. 130-131). In the attending and completing tasks domain, she indicated that C.I.P. had no problem:

    1.      sustaining attention during play/sports activities;

    2.      carrying out single-step instructions;

    3.      organizing his own things or school materials; or,

    4.      working at a reasonable pace/finishing on time.

But, on a daily basis, C.I.P. had a slight problem:

    1.      paying attention when spoken to directly;

    2.      waiting to take turns;

    3.      completing work accurately without careless mistakes; and,

    4.      working without distracting self or others.

And, on a weekly basis, C.I.P. had a slight problem:

    1.      focusing long enough to finish the assigned activity or task;

    2.      refocusing to task when necessary;

    3.      carrying out multi-step instructions; and,

    4.      completing class/homework assignments.

Ms. Holloway also indicated that C.I.P. had an obvious problem changing from one activity to another without being disruptive, on a daily basis (Tr. 132).

### b. *Plaintiff's Daily Activities Questionnaire*

On July 31, 2010, Plaintiff completed a daily activities questionnaire. She reported that C.I.P.:

1. does not need repeated instructions to complete his daily household chores;

2. does not need a lot of supervision;

3. needs help at times;

4. has a low communication level;

5. can only stay on task for three minutes before he loses interest; and,

6. has trouble keeping his attention.

(Tr. 139-141). Plaintiff believed C.I.P. would continue to lag behind other children in school because of his speech impairments and his inability to count and communicate (Tr. 141).

### c. *Kathleen A. Eurich*

On August 24, 2010, Kathleen A. Eurich, M.A., CC-SLP, a speech and language pathologist, observed that C.I.P. required constant redirecting, refocusing, rephrasing and repetition to remain in his chair and complete tasks; and, his use of language was below age expectancy (Tr. 235-236). According to Ms. Eurich, C.I.P.'s use of language may affect his ability to participate in group discussions, understand information or directives, ask and answer questions, formulate explanations, communicate ideas, and interact effectively with others (Tr. 236). Ms. Eurich diagnosed C.I.P. with severe impairment in articulation, and moderate impairment in receptive and expressive language (Tr. 236). His prognosis was poor to fair; she recommended that C.I.P. participate in speech/language therapy for at least 12 months to possibly improve his prognosis (Tr. 236).

### d. *Dr. Muhammad Khalid*

In September of 2010, relying in part on Ms. Holloway's assessment, Muhammad Khalid, M.D., a pediatric specialist, found C.I.P. had less than marked limitation in the acquiring and using information domain, and no limitation in the attending and completing tasks domain (Tr. 59).

### e. *Chloe Roper*

On June 22, 2011, C.I.P.'s long-term substitute kindergarten teacher, Chloe Roper, reported that his reading, math, and written language levels were low (Tr. 243). In the acquiring and using information domain, Ms. Roper indicated that C.I.P. had a slight problem comprehending oral instructions and math problems; an obvious problem understanding and participating in class discussions, and learning new material; a serious problem providing organized oral explanations and adequate descriptions, and recalling and applying previously learned material; and, a very serious problem understanding school and content vocabulary, reading and comprehending written material, expressing ideas in written form, and applying problem-solving skills in class discussions (Tr. 244). Ms. Roper explained:

> There is a vast difference between [C.I.P.'s] oral and written competency. He often requires one-on-one oral instruction in order to complete work and other activities, as opposed to other students who are able to comprehend the instructions I give to the class as a whole and/or are able to decipher/understand the written instructions. Even with one-on-one oral instruction, [C.I.P.] has a hard time taking a previously learned concept and using that knowledge with new material. He very rarely participates in class discussions and is usually unwilling to raise his hand in an attempt to answer a question.

(Tr. 244). In the attending and completing tasks domain, on a daily basis, she noted C.I.P. had a slight problem:

    1.     paying attention when spoken to directly;

      2.      waiting to take turns; and,

      3.      working without distracting himself or others.

He had no problem sustaining attention during play or sports activities, or carrying out single-step instructions. But, on a daily basis, he had an obvious problem:

      1.      refocusing to task when necessary;

      2.      changing from one activity to another without being disruptive;

      3.      organizing his own things or school materials; and,

      4.      completing class/homework assignments.

On a daily basis, C.I.P. also had a serious problem carrying out multi-step instructions. On an hourly basis, C.I.P. had a serious problem focusing long enough to finish the assigned activity or task, and working at a reasonable pace or finishing on time. He had a very serious problem completing work accurately without careless mistakes (Tr. 245). Ms. Roper found:

> [i]nability to focus is a big issue with [C.I.P.] Even with the amount of one-on-one instruction he receives from me, he often has to be redirected and refocused in order for him to complete an assignment. He often makes careless errors, I think, due to his inability to focus, and these cause him to have to go back, correct, and recorrect. He usually does not finish his work during the alotted time.

(Tr. 245).

### *f.* *Kindergarten Progress Report*

C.I.P.'s Kindergarten Progress Report showed that by the end of the fourth quarter, C.I.P. had achieved satisfactory-plus markings in his ability to:

      1.      associate sounds with letters;

      2.      recognize his own name;

      3.      recognize the alphabet;

      4.      work from left to right; and,

     5.     identify colors, shapes, and sizes.

He had satisfactory markings in his ability to:

     1.     express ideas well;

     2.     use adequate vocabulary;

     3.     tell a story in sequence;

     4.     recognize the alphabet in sequence;

     5.     understand the counting order;

     6.     recognize numbers to 10;

     7.     apply knowledge of numbers;

     8.     identify basic shapes;

     9.     dress himself;

     10.     control pencils and scissors;

     11.     paste neatly; and,

     12.     finish what he started.

C.I.P. had satisfactory-minus markings in his attention span; and, in his ability to:

     1.     print his name;

     2.     print the alphabet in sequence;

     3.     recognize numbers above 10;

     4.     write numbers clearly;

     5.     follow directions promptly;

     6.     work neatly; and,

     7.     complete activities promptly.

(Tr. 162).

### D.     *Plaintiff's Claims of Error*

Plaintiff argues that the ALJ committed reversible error when he found C.I.P. suffered from a "less than marked" limitation in the domains of acquiring and using information, and attending and completing tasks.

#### 1.     **Acquiring and Using Information**

With regard to the acquiring and using information domain, the Rulings provide:

> In the domain of "Acquiring and using information," we consider a child's ability to learn information and to think about and use the information.
>
> \*     \*     \*
>
> [W]hen we assess a child's abilities in any of the domains, we must compare the child's functioning to the functioning of same-age children without impairments based on all relevant evidence in the case record.
>
> Although we consider formal school evidence (such as grades and aptitude and achievement test scores) in determining the severity of a child's limitations in this domain, we do not rely solely on such measures.  We also consider evidence about the child's ability to learn and think from medical and other non-medical sources (including the child, if the child is old enough to provide such information), and we assess limitations in this ability in all settings, not just in school.
>
> \*     \*     \*
>
> To . . . assist adjudicators in evaluating a child's impairment-related limitations in the domain of "Acquiring and using information," we . . . provide the following examples of some of the limitations we consider in this domain.
>
> \*     \*     \*
>
> •     Has difficulty remembering what was learned in school the day before.
>
> •     Does not use language appropriate for age.
>
> •     Is not developing "readiness skills" the same as peers (for example, learning to count, reciting ABCs, scribbling).
>
> \*     \*     \*

-14-

- Has difficulty comprehending written or oral directions.
- Struggles with following simple instructions.

SSR 09-3p.

The ALJ stated the following with respect to C.I.P.'s ability to "acquire and use information":

> Though [C.I.P.] is speech and language impaired, there is little evidence that he has a learning disorder which would impede his ability to acquire and use information. There is a lack of evidence that he does not understand words about space, size, or time; that he cannot rhyme words; that he has difficulty with recall; that he is not developing readiness skills the same as his peers; or that he has difficulty comprehending simple instructions. Neither [C.I.P.'s] preschool teacher [Ms. Holloway] nor his kindergarten teacher [Ms. Roper] has noted overall marked limitations in this domain. The undersigned agrees with the childhood disability examiner [Dr. Khalid] that [C.I.P.] has less than marked limitation in this domain. [C.I.P.'s] difficulties with language, particularly receptive language, do limit him in this domain, but not markedly.

(Tr. 26). Plaintiff argues that the ALJ's conclusion that there was a "lack of evidence" to support the examples in SSR 09-3p is incorrect; she points to specific evidence that supports the examples: (1) Ms. Roper's finding that C.I.P. had a "serious" problem recalling and applying previously learned material (Tr. 244); (2) Ms. Roper's finding that C.I.P. "often require[d] one-on-one oral instruction in order to complete work and other activities" (Tr. 244); (3) Ms. Roper's finding that "other students . . . are able to comprehend the instructions I give to the class as a whole and/or are able to decipher/understand the written instructions" as compared to C.I.P. (Tr. 244); (4) Plaintiff's testimony that C.I.P.'s four year old and two year old sisters could follow directions and complete multi-step processes without a lot of help or attention as compared to C.I.P. (Tr. 47); (5) Plaintiff's testimony that C.I.P. could not read or count to 100 like other

children his age (Tr. 50); and, (6) Ms. Eurich's finding that C.I.P.'s use of language was below age expectancy (Tr. 236).[2]

To be sure, Plaintiff is correct that there was some evidence that C.I.P. had difficulty with recall. But, this factor alone is insufficient to establish a marked limitation. *See* SSR 09-3p ("[t]hese examples are drawn from our regulations and training. They are not the only limitations in this domain, nor do they necessarily describe a 'marked' or an 'extreme' limitation").

Furthermore, contrary to Plaintiff's argument, the ALJ did consider Ms. Roper's finding that C.I.P. often required one-on-one instruction to complete his work and had a hard time applying previously learned concepts (Tr. 25). The ALJ also considered Ms. Eurich's speech and language evaluation as it related to C.I.P.'s articulation, receptive and expressive language (Tr. 25).[3] Finally, Plaintiff's testimony that C.I.P. could not follow directions, complete multi-step processes, read, or count to 100; and, Ms. Roper's finding that C.I.P. could not comprehend instructions, does not mean C.I.P. was not developing "readiness skills" the same as his peers. Ms. Roper found C.I.P. only had a "slight" problem comprehending oral instructions (Tr. 244). In her daily activities questionnaire, Plaintiff reported that C.I.P. only needed help "at times"; and, he did not need repeated instructions to complete his daily household chores, or a lot of supervision (Tr. 140). And, by the time C.I.P. finished the fourth quarter of kindergarten, he had satisfactory-plus markings in his ability to:

---

[2] Another example in SSR 09-3p provides that adjudicators should consider whether C.I.P. struggles with following simple instructions. Plaintiff concedes that C.I.P. can follow single step instructions (Dkt. No. 12 at p. 11 (CM/ECF)). As such, this example does not apply.

[3] Ms. Eurich was only qualified for the limited purpose of establishing a speech or language impairment. 20 C.F.R. § 416.913(a)(5).

-16-

1. associate sounds with letters;

2. recognize his own name;

3. recognize the alphabet; and,

4. identify colors, shapes, and sizes.

He had satisfactory markings in his ability to:

1. use adequate vocabulary;

2. tell a story in sequence;

3. recognize the alphabet in sequence;

4. understand the counting order;

5. recognize numbers to 10;

6. apply knowledge of numbers; and,

7. identify basic shapes.

(Tr. 162).

The Court cannot reweigh the evidence, *Carpenter v. Sec'y of HHS*, No. 1:90CV 51, 1990 WL 157297, at *2 (W.D. Mich. June 13, 1990); and, this Magistrate Judge finds that the ALJ adequately summarized the evidence in the record and made a determination that was within his "zone of choice" *Felisky*, 35 F.3d at 1035. As such, the ALJ's determination should not be disturbed on appeal.

### 2. Attending and Completing Tasks

The Rulings state the following with regard to the attending and completing tasks domain:

> In the domain of "Attending and completing tasks," we consider a child's ability to focus and maintain attention, and to begin, carry through, and finish activities or tasks. We consider the child's ability to initiate and maintain attention, including the child's alertness and ability to focus on an activity or task despite

>distractions, and to perform tasks at an appropriate pace.  We also consider the child's ability to change focus after completing a task and to avoid impulsive thinking and acting.  Finally, we evaluate a child's ability to organize, plan ahead, prioritize competing tasks, and manage time.
>
> *   *   *
>
>As in any domain, when we evaluate a child's limitations in the domain of "Attending and completing tasks," we consider how appropriately, effectively, and independently the child functions compared to children of the same age who do not have impairments. For example, a teacher may report that a child "pays attention well with frequent prompting." The need for frequent prompting demonstrates that the child is not paying attention as appropriately, effectively, or independently as children of the same age who do not have impairments. Despite the fact that the child is paying attention with prompting, this child is not functioning well in this domain.
>
> *   *   *
>
>To . . . assist adjudicators in evaluating a child's impairment-related limitations in the domain of "Attending and completing tasks," we . . . provide the following examples of some of the limitations we consider in this domain.
>
>- Is easily startled, distracted, or overreactive to everyday sounds.
>
>- Is slow to focus on or fails to complete activities that interest the child.
>
>- Repeatedly becomes sidetracked from activities or frequently interrupts others.
>
>- Needs extra supervision to stay on task.
>
>- Cannot plan, manage time, or organize self in order to complete assignments or chores.

SSR 09-4p.

>The ALJ found the following with respect to this domain:
>
>[C.I.P.'s] mother testified that [C.I.P.] has difficulty concentrating and frequently requires redirection in order to stay on task.  She further testified that he has difficulty following multi-step instructions.  The speech and language consultative examiner [Ms. Eurich] confirmed that [C.I.P.] needed redirecting, refocusing and repetition to remain in his seat and complete his tasks. [C.I.P.'s] kindergarten teacher [Ms. Roper] made a similar assessment.  Accordingly, the undersigned finds a limitation in this domain, though there is no evidence of a marked limitation.  While such a diagnosis in and of itself would not result in a

> marked limitation in this domain, the undersigned notes that [C.I.P.] has not been diagnosed with an attention deficit-type disorder. [C.I.P.'s] preschool teacher [Ms. Holloway] opined that [C.I.P.] had mostly no problem to a slight problem in this domain, and the childhood disability examiner [Dr. Khalid] opined that he had no limitation in this domain. During the hearing, [C.I.P.] remained in his seat, behaved very well, and remained focused/attentive as the undersigned questioned him. Based on a review of the record as a whole, the undersigned concludes that [C.I.P.] has less than marked limitation in this domain.

(Tr. 27). Again, the Court cannot reweigh the evidence, *Carpenter*, 1990 WL 157297, at *2; and, this Magistrate Judge finds that the ALJ adequately summarized the evidence in the record and made a determination that was within his "zone of choice" *Felisky*, 35 F.3d at 1035. Importantly, the ALJ did not rely on Dr. Khalid's opinion in reaching his decision regarding this domain. *See* Tr. 24 ("The undersigned . . . find[s] that Dr. Khalid *slightly underestimated* [C.I.P.'s] limitations in the domain[] of attending and completing tasks") (emphasis added).[4]

The ALJ's determination that C.I.P. suffered less than marked limitation in this domain should not be disturbed on appeal.

## IV. CONCLUSION

Because substantial evidence supports the ALJ's decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised

---

[4]Dr. Khalid found no limitation in this domain (Tr. 59).

-19-

that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                          s/Mark A. Randon  
                                          Mark A. Randon  
                                          United States Magistrate Judge

Dated: September 24, 2013

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, September 24, 2013, by electronic and/or ordinary mail.*

                                          *s/Eddrey Butts*  
                                          *Case Manager to Magistrate Judge Mark A. Randon*